IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CLINT LEROY M.,[1]       No. 6:18-cv-0632-HZ

        Plaintiff,      OPINION & ORDER

    v.

COMMISSIONER, Social Security
Administration,

        Defendant.

HERNÁNDEZ, District Judge:

    Plaintiff brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-governmental party's immediate family members.

1 - OPINION & ORDER

Because the Commissioner's decision is free of legal error and supported by substantial evidence in the record, the Court AFFIRMS the decision and DISMISSES this case.

## BACKGROUND

Plaintiff was born on December 18, 1968 and was forty-four years old on August 9, 2013, the alleged disability onset date. Tr. 23, 34.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through December 31, 2013. Tr. 23. Plaintiff has a limited education and is unable to perform any past relevant work. Tr. 34. Plaintiff claims he is disabled based on conditions including post-traumatic stress disorder, major depressive disorder, alcohol use disorder in remission, status-post fracture right posterior acetabulum, lumbar spine degenerative disc disease and L5-S1 spondylosis, cervical spine degenerative disc disease, and deep vein thrombosis. Tr. 24.

Plaintiff's benefits application was denied initially on January 28, 2014, and upon reconsideration on July 17, 2014. Tr. 21. A hearing was held before Administrative Law Judge Katherine Weatherly on June 16, 2016. Tr. 41–70. ALJ Weatherly issued a written decision on September 15, 2016, finding that Plaintiff was not disabled and therefore not entitled to benefits. Tr. 35. The Appeals Council declined review, rendering ALJ Weatherly's decision the Commissioner's final decision. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v.*

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 10.

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 23.

At step two, the ALJ determined that Plaintiff had "the following severe impairments: post-traumatic stress disorder (PTSD); major depressive disorder; gambling disorder; alcohol use disorder in remission; rule out borderline intellectual functioning; status-post fracture right posterior acetabulum; lumbar spine degenerative disc disease and L5-S1 spondylosis; cervical spine degenerative disc disease; right leg deep vein thrombosis; right hip labral tear status-post open reduction internal fixation (ORIF); and, after expiration of the date last insured, right lower extremity meralgia parestetica." Tr. 24. The ALJ determined that Plaintiff's diverticulosis, hemorrhoids, benign prostatic hypertrophy, and colon polyps were not severe. Tr. 24.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 24.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he can frequently climb ramps and stairs and only occasionally climb ladders, ropes, and scaffolds; he can frequently balance, kneel, and crouch; he can occasionally stoop and crawl; he must avoid concentrated exposure to vibration and workplace hazards such as heights and heavy machinery; he can understand, remember, and carry out simple routine repetitive tasks; and he can have no contact with the general public and only occasional contact with coworkers." Tr. 26.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 34.

At step five, the ALJ relied on the testimony of a vocational expert to find there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Tr. 34. Accordingly, the ALJ concluded that Plaintiff was not disabled. Tr. 35.

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff raises three issues on appeal. He argues the ALJ erred by (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly rejecting the lay witness testimony of a physical therapist; and (3) improperly relying on vocational expert testimony based on an incomplete hypothetical.

### I. Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ improperly discounted his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed

to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons" (quotation marks and citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." (quotation marks and citations omitted)). An ALJ must include specific findings supported by substantial evidence and a clear and convincing explanation for discounting a claimant's subjective symptom testimony.

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider a plaintiff's ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Here, the ALJ summarized Plaintiff's testimony as follows:

The claimant has alleged that he has mental problems from being in a motor vehicle accident in which his brother passed away in August 2013. He also alleged having disabling pain. The claimant alleged that he walks with a limp and gasps for air. He also alleged that he has pain throughout his entire body due to problems with his spine.

> Functionally, the claimant alleged that he cannot lift anything comfortably, cannot sit for any length of time, and has problems standing. However, he also testified that he can pack his own groceries and carry a grocery bag. He also testified that he can sit for as long has he has to. Similarly, he stated that he can walk for as far or as long as he has to and could walk across the entire country. The claimant alleged that his mental impairments cause him to have nightmares, which causes him to get very little sleep. The claimant also stated that no one wants to be around him because he is irritable and impossible to be around. He also stated that he cannot stand to be around other people for more than a few minutes due to his irritability. The claimant stated he goes out to eat with his family and has problems concentrating due to his impairments. Lastly, the claimant testified that he is unable to function for about half the days in a month due to his impairments and is not currently taking any medication for his impairments because medication has never helped treat his impairments (Hearing Testimony).
>
> Before the hearing, the claimant completed a function report and alleged problems with dressing due to pain and problems with bathing due to not being able to stand for very long (3E p. 3). The claimant reported that he prepares no meals because he cannot stand (3E p. 3). He also alleged that he does no housework (3E p. 4). The claimant reported being only able to walk short distances before having to sit down (3E p. 4). He also reported shopping in stores for food (3E p. 4). The claimant reported having problems getting along with family and friends (3E p. 6). He also alleged that he does not follow instructions well (3E p. 6). Lastly, he alleged that he does not handle stress very well (3E p. 7).

Tr. 27.

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not identify evidence of malingering. Tr. 27. However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." Tr. 27.

Plaintiff argues that, while the ALJ summarized the medical evidence, she failed to explain how that evidence was inconsistent with Plaintiff's allegations. The Court does not agree; the ALJ gave explicit examples of allegations she found inconsistent with the medical evidence. For example, the ALJ wrote that Plaintiff "alleged that he gasps for air but [] consistently denied having shortness of breath or wheezing while treating for his impairments,

7 - OPINION & ORDER

and physical exams consistently noted normal respiratory findings. Similarly, [Plaintiff] alleged that he walks with a severe limp at the hearing, but was noted to have a normal gait and station upon exam." Tr. 32 (citations omitted).

Plaintiff also fails to acknowledge the ALJ's other reasons for rejecting Plaintiff's testimony. For example, the ALJ found that Plaintiff (1) reported improvement with treatment, (2) received recommendations for conservative or minimal treatment, (3) did not pursue treatment when available, and (4) testified to limitations that were unsupported by objective medical evidence. Tr. 32–33. As a general matter, these are legally sound reasons to reject subjective symptom testimony. *See e.g.*, *Molina*, 674 F.3d at 1112 (An ALJ may rely on inconsistent testimony when assessing a Plaintiff's subjective symptom testimony); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly relied on Plaintiff's favorable response to conservative treatment that included physical therapy); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (ALJ may rely on "[u]nexplained, or inadequately explained, failure to seek treatment," absent a good reason). Because Plaintiff fails to challenge these reasons, the Court declines to address them here. Thus, Plaintiff has failed to identify error in the ALJ's treatment of Plaintiff's subjective symptom testimony.

**II.     Lay Witness Testimony**

Lay testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114; *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."). Lay witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Molina*, 674 F.3d at 1114.

Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). Examples of germane reasons include conflicts with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

Plaintiff argues the ALJ did not provide *any* reason for rejecting the opinion of Erin Kettler, Plaintiff's physical therapist. While Ms. Kettler did not provide distinct opinion testimony on Plaintiff's impairments and limitations, her treatment notes were included in the ALJ's record. Plaintiff focuses on a single note within those records, where Ms. Kettler wrote—in a 2015 assessment—that Plaintiff

> presents with reduced cervical and shoulder ROM, reported pain and radicular symptoms in neck and arms, stiffness in neck reported, stiff joint mobility cervically, and poor posture. These impairments lead to reduced ability to perform tasks or comfortably look around during daily activities, which cause difficulty fulfilling role as a worker.

Tr. 476; Pl. Br. 14. Defendant agrees the ALJ did not address this specific note, but argues that any error was harmless.

An error is harmless if it is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." *Molina*, 674 F.3d at 1122 (citations and internal quotation marks omitted). In *Molina*, the ALJ's failure to discuss or weigh the lay witness testimony was harmless error because the lay testimony did not describe any limitations beyond those the claimant described, and the ALJ had already provided clear and convincing reasons for rejecting claimant's subjective symptom testimony. *Id.*

Here, Ms. Kettler's note describes impairments and limitations discussed and rejected at other points throughout the ALJ's decision. For example, not only did the ALJ reject Plaintiff's subjective symptom testimony generally, but the ALJ specifically rejected Plaintiff's reports of

neck pain and stiffness because a treating physician "recommended the claimant pursue conservative treatment for his cervical problems instead of having surgical intervention" and because Plaintiff reported that "he had not pursued any treatment for his neck pain, which suggests his neck pain is not as severe as allege[d]." Tr. 33 (citations omitted). While the note documents "reduced cervical and shoulder range of motion" on January 26, 2015 (more than two years after Plaintiff's last insured date), the ALJ also emphasized that Plaintiff presented with a normal range of motion and no pain only two weeks later. Tr. 29, 481. Finally, Ms. Kettler's cursory conclusion that Plaintiff had a "reduced ability to perform tasks"—without further explanation or support in her records—is of negligible probative value given the context here. The Court therefore finds that any error the ALJ may have committed in discounting Ms. Kettler's opinion testimony was harmless.

### III. Vocational Expert Testimony Based on an Incomplete Hypothetical

Lastly, Plaintiff argues the ALJ erred by relying on vocational expert testimony that was based on an incomplete hypothetical. Plaintiff does not identify any specific hypothetical, but argues that the ALJ erred in failing to include "functional limitations stemming from Plaintiff's cervical degeneration and brachial neuritis in the RFC assessment." Pl. Br. 11. According to Plaintiff, these functional limitations include a limited range of movement in his neck and weak, unsteady, and "clumsy" hands. *Id.* at 9–11.[3]

The ALJ categorized Plaintiff's cervical spine degenerative disc disease as a severe impairment but did not specifically discuss whether this impairment imposed any functional limitations. Tr. 24–33. Instead, the ALJ concluded that Plaintiff was able to lift and carry twenty-

---

[3] Plaintiff also identifies symptoms including pain, numbness, and tingling, but does not tie these symptoms to other limitations.

five pounds occasionally and ten pounds frequently, with no other handling, fingering, or upper extremity limitations. Tr. 26. The ALJ did not consider the reaching, handling, fingering, and lifting limitations or restrictions that Plaintiff claims resulted from his cervical degeneration and brachial neuritis. Tr. 30–33.

"Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE." *Rhinehart v. Colvin*, No. 2:15-cv-01704-AC, 2016 WL 7235680, at *12 (D. Or. Dec. 12, 2016); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). Here, Plaintiff does not identify any opinion evidence to support his claimed limitations (as opposed to symptoms). Instead, Plaintiff relies on his own testimony and the medical evidence. As discussed above, the ALJ rejected Plaintiff's subjective symptom testimony, and Plaintiff did not identify error in that conclusion. The medical evidence also does not support Plaintiff's position. For example, as discussed above, Dr. Sherman found that Plaintiff's "extremities all had normal strength," Tr. 33, 413, and Plaintiff reported improvement in arm and neck mobility with physical therapy, Tr. 29, 30, 472–3.

Plaintiff's citations to the record do not compel a different conclusion. These records are largely based on Plaintiff's own self reports and do not document any tests or other objective evidence that might show weakness or clumsiness. For example, Dr. Ballinger wrote that Plaintiff "says that his hands go numb intermittently and sometimes []he drops things." Tr. 381. Dr. Friess wrote that Plaintiff reported numbness in his hands—which Plaintiff believed was caused from his use of a walker following surgery—but made no reference to weakness or clumsiness.

In sum, while objective evidence may support the ALJ's conclusion that Plaintiff suffered from cervical disc degeneration, nothing ties that diagnosis with the claimed limitations. Because

Plaintiff has failed to identify any evidence that supports his claimed limitations, the ALJ did not err in formulating Plaintiff's RFC.

## CONCLUSION

The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Dated this 10 day of Sept, 2019.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge